IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

RECEIVED CLERK'S OFFICE

2016 MAR 15 P 1: 10

| | |
|---|---|
| Gregg Covington, ) | Civil Action No. 9:15-2629-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Syngenta Corporation, Donnie Infinger, ) | |
| BASF Corporation, *and* Meherrin ) | |
| Agricultural & Chemical Company LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendants' motions to dismiss or strike Plaintiff's experts (Dkt. Nos. 49 & 50) and motion for sanctions (Dkt. No. 48), and Plaintiff's motion for voluntary dismissal or remand (Dkt. No. 51). For the following reasons, the Court denies these motions and amends the scheduling order in this case.

## I.    Background

Plaintiff filed this action on May 22, 2015. Plaintiff alleges that Defendants sold Plaintiff agricultural chemicals in spring 2012 for use on Plaintiff's cotton crop of approximately 1200 acres, and that those chemicals damaged his cotton crop. The Complaint asserts causes of action for breach of warranty and negligence, and seeks unspecified damages. Defendants removed to this Court on July 1, 2015, asserting that there is complete diversity and that the amount in controversy exceeds $75,000. Plaintiff moved to remand on July 29, 2015; the Court denied that motion on October 23, 2015 (Dkt. No. 39). Defendants filed two motions to compel on October 16, 2015 (Dkt. Nos. 36 & 36); the Court granted those motions on November 3, 2015 (Dkt. No. 42).

-1-

On February 8, 2016, Defendant Syngenta Corporation ("Syngenta") moved for dismissal as a sanction for Plaintiff's alleged failure to comply with discovery obligations, including the two orders to compel. On February 9, 2016 and February 16, 2016, Defendants BASF Corporation ("BASF") and Meherrin Agricultural & Chemical Company ("Meherrin") respectively moved to dismiss, or in the alternative, to strike Plaintiff's experts. The basis for each motions to dismiss is also Plaintiff's alleged failure to comply with discovery obligations. Defendants in the alternative seek to strike Plaintiff's experts because Plaintiff has not provided the expert reports required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

On February 25, 2016, Plaintiff stipulated that the amount in controversy does not and will not exceed $75,000 and that Plaintiff will consent to a remittitur of any verdict in excess of $75,000. (Dkt. No. 52.) Plaintiff simultaneously moved for voluntary dismissal without prejudice or, in the alternative, for remand to state court. (Dkt. No. 51.)

## II.    Discussion

### A.    Plaintiff's Motion to Remand or to Dismiss

#### 1.    Motion to Remand

Plaintiff's stipulation raises the issue of whether a plaintiff in a diversity case may secure a remand to state court by stipulating, post-removal, that the amount in controversy is less than the diversity threshold of $75,000. The question divides the Federal courts. The Third, Sixth, and Seventh Circuits hold that post-removal damage stipulations should be disregarded. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). The Fifth Circuit holds that post-removal damage stipulations may be considered. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). The Fourth Circuit has not ruled on this issue.

The Supreme Court has interpreted 28 U.S.C. § 1441(a) to require that a "case be fit for federal adjudication at the time [a] removal petition is filed." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996). This means that "jurisdiction is determined as of the time of removal." *Rota v. Consolidation Coal Co.*, No. 98–1807, 1999 WL 183873, at *1 (4th Cir. Apr. 5, 1999). Accordingly, it is well-settled that when a defendant bases removal on diversity jurisdiction, the amount in controversy is determined at the time of removal. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("And though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction.") In making this determination, the amount claimed by the plaintiff in his complaint controls unless the claim is made in bad faith. *See* 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702, at 322 (4th ed. 2011) ("Under well-settled principles of pleading, the plaintiff is the master of the statement of his claim. Thus, . . . as the judicial precedents make clear, if the plaintiff chooses to ask for less than the jurisdictional amount in a state court complaint, absent a showing of bad faith[,] only the sum actually demanded is in controversy even though the pleader's motivation is to defeat removal.").

The Fifth Circuit, and, as described below, many courts in Fourth Circuit, allow consideration of post-removal damages stipulations as a basis for remand where such stipulations serve to clarify, but not reduce, the amount of damages. *See Gebbia*, 233 F.3d at 883. But the Fifth Circuit has also recognized that plaintiffs act in bad faith when they engage in jurisdictional manipulation by "plead[ing] for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading." *De Aguilar v. Boeing Co.*, 47 F.3d

1404, 1410 (5th Cir.1995). To prevent such abuse, the Fifth Circuit has held that "if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount," the burden shifts to the plaintiff to demonstrate to a legal certainty that he "will not be able to recover more than the damages for which he has prayed in the state court complaint." *Id.* at 1411. This standard requires the defendant to prove "by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount," which involves "more than pointing to a state law that might allow the plaintiff to recover more than what is pled." *Id.* at 1412 (emphasis omitted). If the defendant is able to make this showing, the Fifth Circuit allows that plaintiffs can satisfy their "legal certainty" obligation by pointing to a statute limiting their damages to what they claimed in their complaints or, in the absence of such a statute, by "fil[ing] a binding stipulation or affidavit *with their complaints.*" *Id.* (quoting *In re Shell Oil Co.*, 970 F.2d at 356) (internal quotation marks omitted) (emphasis added).

There is no binding Fourth Circuit precedent on this question; however, Fourth Circuit has made favorable reference to the Fifth Circuit's *De Aguilar* decision in an unpublished 2005 case. The Fourth Circuit observed that when the Supreme Court stated (in dicta) that a plaintiff can "'resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove,'" that dicta "was premised on the notion that plaintiffs would be bound by the amount alleged in the ad damnum clause of the complaint." *Aikens v. Microsoft Corp.*, 159 F. App'x 471, 475–76 (4th Cir. 2005) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. at 294 (dicta)). However, that premise that is no longer uniformly true, which "gives rise to the concern that plaintiffs will use a low *ad damnum* clause to avoid removal, secure in the knowledge that state law will allow them to recover more after removal would no longer be timely." *Id.* at 476 (citing *De Aguilar*, 47 F.3d at 1410). "Courts

have resolved this concern by requiring plaintiffs seeking to defeat removal jurisdiction in states where the ad damnum clause at the time of filing is not legally binding to 'file a binding stipulation or affidavit with their complaints.'" *Id.* at 1412 (quoting *De Aguilar*, 47 F.3d at 1412).

The Fourth Circuit's reasoning in referring to *De Aguilar* approves of damages stipulations when they act essentially as binding *ad damnum* clauses but not when they act as maneuvers to challenge jurisdiction post-removal. Had Plaintiff filed a damages stipulation prior to removal, diversity jurisdiction would have been defeated. Filing a stipulation now, after removal, is too late.

There is, however, an exception to that rule. Although the Supreme Court has frowned upon the use of stipulations to manipulate the amount in controversy for jurisdictional purposes, *see St. Paul Mercury*, 303 U.S. at 292, stipulation has been used in this Circuit in cases where the amount in controversy is "indeterminate." *See, e.g., Lawson v. Tyco Elecs. Corp.*, 286 F. Supp. 2d 639, 642 (M.D.N.C. 2003); *Dash v. FirstPlus Home Loan Owner Tr.* 1996-2, 248 F. Supp. 2d 489, 497 (W.D.N.C. 2003); *Gwyn v. Wal-Mart Stores, Inc.*, 955 F. Supp. 44, 46 (M.D.N.C. 1996) (considering party stipulation as the "first evidence of the value of the claim"); *Griffin v. Ford Consumer Fin. Co.*, 812 F. Supp. 614, 616 (W.D.N.C. 1993). In such cases, stipulations do not reduce damages but only clarify them. Thus, courts have, for jurisdictional purposes, "considered evidence of damages subsequent to the complaint" when "such evidence has been largely in the nature of losses that were unknown at the time of pleading or for determining the value of the claim where the complaint did not state a definite amount." *Lawson*, 286 F. Supp. 2d at 642. In *Lawson*, the plaintiff submitted an affidavit contemporaneously with a motion to remand stating that the value of damages sought does not exceed $75,000. *Id.* The *Lawson* court acknowledged the stipulation because "the amount in controversy is indeterminate from the face of the complaint"

and consequently held that, "[b]ecause the requirements of diversity jurisdiction are absent, the court lacks subject matter jurisdiction over this case." *Id.*

In the present case, Plaintiff's prayer for relief is inarguably indeterminate: Plaintiff only "prays for a judgment in his favor as well as any other relief deemed to be proper." (Compl. Pr. for Relief; Am. Compl. Pr. for Relief.) The Complaint does not state a definite amount (or any amount). But the absence of a specifically pled dollar amount does not necessarily mean that "the amount in controversy is indeterminate from the face of the complaint." For example, a complaint might allege a loss of goods typically worth far more than the jurisdictional threshold—*e.g.*, an alleged loss of twenty new automobiles would suffice to meet the amount in controversy requirement.

Defendants' removal notice asserts that "a reasonable interpretation of the allegations in the pleadings is that the matter in controversy between Plaintiff and Defendants . . . exceeds . . . $75,000.00" because Plaintiff alleges, *inter alia*, injury to a cotton crop of approximately 1200 acres. (Notice of Removal ¶ 19; *see also* Compl. ¶ 5.) Defendant did not monetize that allegation, but the Court takes notice that in 2012 the average gross value of production for 1200 acres of cotton on the southern seaboard was $1,190,796; a total loss presumably would obviate ginning costs of $180,204; thus, a total loss of the average 1200 acres of cotton on the southern seaboard would be approximately $1 million. *See* Nat'l Cotton Council of Am., *Cotton Production Costs and Returns: Southern Seaboard*, http://www.cotton.org/econ/cropinfo/costsreturns/seaboard.cfm (last visited Feb. 26, 2016). The Court of course has no idea whether that average accurately describes the crops at issue in this case, or what other expense offsets might apply, or what degree of damage Plaintiff's crops suffered, if any. Indeed, Plaintiff does not allege a total loss, but only "areas of dead, dying and cotton failing to thrive throughout several of his field[s]." (Compl. ¶ 5.)

But for the purpose of a jurisdictional determination, the only reasonable interpretation available from the face of the complaint at the time of removal is that the alleged damages—the loss of up to 1200 acres of cotton—exceeds $75,000. Plaintiff's stipulation simply is not the "first evidence of the value of the claim" in this case. Instead, it is a post-removal maneuver to defeat jurisdiction, prohibited by *St. Paul Mercury*, 303 U.S. at 292.

Therefore, Plaintiff's second motion to remand (contained in Plaintiff's motion to dismiss, Dkt. No. 51) is denied.

### 2. Voluntary Dismissal

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that, after an answer has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The purpose of the rule is "freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The general rule is that "[a] plaintiff's motion to voluntarily dismiss a claim should not be denied absent plain legal prejudice to the defendant." *Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001).

Courts consider a motion for a voluntary dismissal using a four-factor test. The relevant factors include: "'(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of litigation, *i.e.*, whether a motion for summary judgment is pending.'" *Wilson v. Eli Lilly & Co.*, 222 F.R.D. 99, 100 (D. Md. 2004) (quoting *Teck Gen. P'ship v. Crown Cent. Petroleum Corp.*, 28 F. Supp. 2d 989, 991 (E.D. Va. 1998)).

Here, the purpose of Plaintiff's motion for voluntary dismissal is to litigate the case in state court. But the fact that Plaintiff is not entitled to remand directly does not mean that Plaintiff cannot seek voluntary dismissal without prejudice as a mechanism to remand. *See, e.g., Lang v.*

*Mfrs. & Traders Tr. Co.*, 274 F.R.D. 175, 182 (D. Md. 2011) ("'However, *St. Paul* and the other cases . . . do not involve a request for *voluntary dismissal*. Therefore, [those] cases are not instructive on the availability of a Rule 41(a)(2) dismissal . . . .'" (quoting *O'Reilly v. R.W. Harmon & Sons, Inc.*, 124 F.R.D. 639, 640–41 (W.D. Mo. 1989)) (emphasis in original)); *Katzman v. Am. Airlines, Inc.*, Civ. No. 97-8321-JSM, 1997 WL 752730, at *1 (S.D.N.Y. Dec. 4, 1997) ("[E]ven when plaintiffs seek discretionary dismissal under Rule 41(a)(2), nearly all courts grant those dismissals when defendant's only argument against dismissal is that the plaintiff manifestly seeks to defeat federal jurisdiction") (collecting cases). The relevant inquiry when considering a motion for voluntary dismissal is the manner and degree of prejudice that would inure to the defendant if the motion were granted—that is true even when the plaintiff seeks voluntary dismissal as a tactic to defeat federal jurisdiction. The mere prospect of defending the suit in state, rather than federal, court does not constitute prejudice. *Davis*, 819 F.2d at 1274–75 ("[T]he mere prospect of [a] transfer of litigation to state court [is] an insufficient basis for denying [a] motion for voluntary dismissal" (internal quotation marks and citations omitted)).

The four-factor test set forth in *Wilson* and *Teck* here recommends denial of the relief Plaintiff requests. The "present stage of the litigation" is that discovery is nearly complete and dispositive motions are imminent. Because the litigation has advanced significantly, Defendants have expended significant expense in preparing for trial. Discovery was scheduled to be by now complete; however, the parties currently dispute Plaintiff's compliance with this Court's orders to compel and with Plaintiff's expert disclosure obligations. Dismissing this case for it be refiled in a different court, instead of adjudicating the remaining discovery disputes so that discovery may be promptly closed in the near future, would undoubtedly impose additional expense on Defendants. *See Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 179–80 (4th Cir. 2008)

(collecting cases affirming district court denials of motions for voluntary dismissal after the discovery period). Plaintiff alleges actionable conduct that occurred three years ago. It is now (nearly) time to try that allegation. The time to select venue has passed. (*See* Order, Dkt. No. 40, Oct. 23, 2015 (denying Plaintiff's first motion to remand).)

Indeed, Plaintiff's motion for voluntary dismissal is dilatory. Plaintiff stipulated to damages below the jurisdictional threshold *eight months* after removal, less than two weeks before discovery was due to be completed, and only four months before the case is subject to being called for trial. *Cf. Hailstock v. Home Depot USA*, Civ. No. 11-1438-DKC, 2011 WL 3240484, at *2 (D. Md. July 27, 2011) (granting a motion for voluntary dismissal for the purpose of litigating the case in state court where "[t]here has not been excessive delay or lack of diligence on the part of Plaintiff; indeed, she filed her motion for voluntary dismissal approximately *three weeks* after removal and two weeks after entry of the scheduling order" (emphasis added)).

The Court therefore denies Plaintiff's motion for voluntary dismissal or, in the alternative, for remand.

### B.   Defendants' motions to dismiss and to strike Plaintiff's experts

Defendant Syngenta moves for sanctions for failure to comply with discovery obligations, where the requested sanction is dismissal with prejudice. Defendants BASF and Meherrin each move for dismissal, where the asserted basis for dismissal is failure to comply with discovery obligations. Defendants assert that Plaintiff has failed to respond fully to Syngenta's first request for production of documents as required by this Court's Order dated November 3, 2015, that Plaintiff has failed to provide expert disclosures required under Rule 26(a)(2) of the Federal Rules of Civil Procedure, and that Plaintiff has been nonresponsive to correspondence from counsel.

"[D]ismissal with prejudice is a harsh sanction which should not be invoked lightly." *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982) (internal quotation marks

omitted). In considering dismissal with prejudice as a sanction, the Court considers "(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a drawn out history of deliberately proceeding in a dilatory fashion, and (4) the existence of a sanction less drastic than dismissal." *Id.* (internal quotation marks omitted). The Court will dismiss with prejudice as a sanction only where it is apparent that no other effective sanction is available.

Failure to make expert disclosures does not meet that demanding standard. Excluding an expert is the sanction for failure to make required disclosures regarding that expert. Fed. R. Civ. P. 37(c)(1). And that sanction is not automatic: experts are not excluded if the failure to disclose is justified or if it is harmless. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). In determining whether failure to make an expert disclosure is harmless, the Court considers, *inter alia*, "the surprise to the party against whom the witness was to have testified" and "the ability of the party to cure that surprise." *Id.*

The Court is satisfied that the delay in service of Plaintiff's expert disclosures has not prejudiced Defendants in a way that cannot be cured. Plaintiff has designated three experts: Scott Weathington, Scott Butler, and Dan Robinson. (Dkt. No. 54 at 1–2.) Mr. Weathington is designated as a retained expert, and Mr. Butler and Mr. Robinson are designated as non-retained hybrid fact-expert witnesses. (*Id.*) Plaintiff represents that Defendants have been provided a summary of the subject matter on which each witness is expected to testify and the facts and opinions to which each is expected to testify, as well as the retained expert's *curriculum vita*. Plaintiff does not explain why Plaintiff's retained expert has not produced his report or when that report will be ready. Moreover, the Court has reviewed the Rule 26(a)(2) responses Plaintiff has provided, and finds that they are woefully inadequate. Plaintiff's responses state the topics on

which witnesses will opine in the broadest possible terms, *e.g.*, "will after [*sic*] opinions regarding Plaintiff['s] agricultural practices, methods, and farm management." (Dkt. No. 47 at 2.) That is a statement of the "subject matter on which the witness is expected to present evidence" required by Rule 26(a)(2)(C)(i). Rule 26(a)(2)(C)(ii) additionally requires "a summary of the facts and opinions to which the witness is expected to testify." Plaintiff has not met that requirement for either non-retained expert.

The Federal Rules of Civil Procedure additionally require that parties provide expert disclosures by a date certain, not whenever the disclosures happen to be completed. *See* Fed. R. Civ. P. 26(a)(2)(D). Therefore, the Court orders Plaintiff to serve all expert disclosures required by the Federal Rules of Civil Procedure—including adequate Rule 26(a)(2)(C) disclosures—by March 21, 2016. Experts not complying with that deadline will be excluded. Furthermore, the Court reserves judgment on BASF's contention Mr. Butler is in fact a retained expert under Rule 26(a)(2)(B) who must produce an expert report. (*See* Dkt. No. 49 at 7.) If Mr. Butler—or Mr. Robinson—does not file an expert report as required by Rule 26(a)(2)(B) and it thereafter becomes apparent to the Court that he is in fact a retained expert, the Court will exclude him as a witness. Plaintiff can avoid that peril by providing expert reports from those witnesses, if Plaintiff is not certain that they are in fact non-retained experts.

Defendants also argue that, in addition to not making required witness disclosures, Plaintiff failed to provide required document productions and failed to respond to deficiency correspondence from opposing counsel. Specifically, Defendants claim Plaintiff has not produced all documents responsive to Syngenta's first request for production, which this Court's Order dated November 3, 2015 required Plaintiff to do by November 24, 2015. Plaintiff's counsel counters,

> In response to Syngenta's motion, Plaintiff asserts his counsel has complied with
> the discovery requests and the Court's orders to the best of his abilities. As noted

> in Plaintiff's responses to Syngenta's discovery requests, many of the documents are not in Plaintiff's possession but have been requested from third parties. Counsel has produced all responsive documents in his possession, and has been and is actively seeking the documents that Syngenta asserts are outstanding.

(Dkt. No. 53 at 1.) It is unclear if Plaintiff's counsel is representing that Plaintiff has produced all responsive documents in Plaintiff's possession, or just that counsel has produced all responsive documents in counsel's possession. That ambiguity is unsatisfactory. Plaintiff must produce all responsive documents in his "possession, custody, or control," Fed. R. Civ. P. 34(a)(1), not just those documents he chooses to give to his lawyer. Syngenta alleges that Plaintiff has not complied with this Court's Order dated November 3, 2015. Plaintiff fails to deny that allegation unequivocally. Therefore, Plaintiff will file an affidavit with the Court by March 21, 2016, either affirming that all documents in Plaintiff's possession, custody, or control and responsive to this Court's Order dated November 3, 2015 have been produced, or explaining Plaintiff's failure to do so. Failure to file the affidavit will result in dismissal of this action with prejudice.

## III. Amended Scheduling Order

The deadlines provided in this Order require amendment of the Second Amended Scheduling Order (Dkt. No. 46.) The schedule for this case is amended as given below.

> Plaintiff's Affidavit Confirming Compliance with Order Dated November 3, 2016 must be filed no later than **March 21, 2016**.

> Defendants' Expert Witness Identification shall be served no later than **April 18, 2016**.

> Records Custodian Affidavits shall be served no later than **April 26, 2016**.

> Discovery shall be completed no later than **May 3, 2016**.

> Dispositive Motions and *Daubert* Motions shall be filed by **May 17, 2016**.

> Mediation shall be completed by **May 24, 2016**.

All other deadlines provided in the Second Amended Scheduling Order are unchanged.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for voluntary dismissal or remand (Dkt. No. 51) is **DENIED**; Defendants' motions for sanctions, for dismissal and to strike Plaintiff's experts (Dkt. Nos. 48, 49, 50) are **DENIED**; and the Second Amended Scheduling Order (Dkt. No. 46) is **AMENDED** as provided in this Order.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

March _15_, 2016
Charleston, South Carolina